**In re Wendi Dianne McPHERSON, Debtor.**

**Bankruptcy No. 98–02638.**

United States Bankruptcy Court, D. Idaho.

Sept. 10, 1998.

Jon R. Wilson, Boise, Idaho, for Debtor.

Joseph M. Meier, Cosho, Humphrey, Greener & Welsch, Boise, Idaho, for Creditor Karen Kelly.

Bernie R. Rakozy, Boise, Idaho, Trustee.

## SUMMARY ORDER ON MOTION FOR STAY RELIEF

TERRY L. MYERS, Bankruptcy Judge.

This matter comes before the Court upon the motion of Karen Kelly for relief from automatic stay in order to pursue her state law remedies regarding certain real property which is the residence of the Debtor. 11 U.S.C. § 362(d). Final hearing was held on September 9, 1998 at which time Kelly and the Debtor presented testimony and documentary evidence, and their counsel presented argument regarding this matter.

This opinion constitutes the Court's findings of fact and conclusions of law in regard to the stay relief request. Fed.R.Bankr.Pro. 7052, 9014. This decision has been expedited, due to the circumstances in this case, and the Court therefore reserves the right to supplement or amend these findings and conclusions as it deems necessary. Relief from stay is appropriate if the proponent establishes "cause" including the lack of adequate protection of its interest in property.

§ 362(d)(1). Relief from stay is also appropriate with respect to a stay of acts against property if the Debtor does not have equity in the property and the property is not necessary to an effective reorganization. § 362(d)(2)(A) and (B). Kelly presents her request for relief under both subsections.

The present Chapter 13 case was filed on August 11, 1998. It followed an earlier 1998 Chapter 13 case that was dismissed on July 7, 1998 for failure to make plan payments. A plan has not yet been confirmed in this case, though one has been proposed. Debtor's counsel admits that several amendments to the existing proposal need to be made. Certain of those amendments have to do with the amount of default owed secured creditors which must be cured in order for Debtor to confirm a plan. §§ 1322(b), 1322(e), 1325(a)(1) and (5). It appears the Debtor has significantly understated the amount needed to cure defaults owed Wendover Financial Services Corp., the senior secured creditor on the residence, and owed Kelly who holds the second secured position on this real property.

Substantial defaults in performance of the obligations owed Wendover and Kelly have occurred. The Plan claims Wendover's default amount is $7,000 and Kelly's is $2,800. The evidence, however, would indicate that Kelly's default is at a minimum $5,138.47 and Wendover's is over $11,000. While there were discrete areas of Kelly's calculations that were contested by Debtor, these would vary little the magnitude of the defaults which must be cured under the plan.

The plan filed with the Court contemplates recommencing regular monthly payments to the secured creditors in September. These payments, even with the promise of future payments and, perhaps, confirmation of a plan, fall short of establishing that Kelly is adequately protected today. Also relevant is the fact that Wendover, as a senior secured creditor, is entitled under § 506( b) to recover accruing interest, costs and attorney's fees. Wendover's "payoff statement" dated August 21, 1998, asserts a total claim of $75,165.68. Passage of time increases the claim of Wendover to the direct detriment of Kelly. What equity cushion, if any, protects Kelly?

The Debtor's schedules assert that the residence has a fair market value estimated at $93,000.00. The Wendover claim, according to the Debtor, is $60,400.00 and Kelly's claim, again according to the Debtor, is $30,000.00. Given the ordinary costs which would be incurred in order to realize upon such collateral in the event of foreclosure and sale, and more importantly given the ongoing accrual of claims under § 506(b) for one or both of the secured creditors, there is no equity in the property and no cushion for Kelly.

No evidence was presented to the Court at hearing that would indicate this analysis is in error. Indeed, the only evidence that would impact the determination of equity or equity cushion was that presented by Kelly which indicates that the claims Debtor has scheduled for both Wendover and Kelly are, in all likelihood, understated by a significant degree—some $15,000 in the case of Wendover. Additionally, precedent supports the concept that the Court should give consideration to the nature of the creditor holding the claim at issue. Kelly, by her uncontroverted testimony, relies upon the income stream from this and several other properties as her source of income. That testimony establishes that the contract payment by the Debtor, when made, constitutes somewhere in the range of 25% of Kelly's monthly expected income. Kelly is not an institutional lender to whom this cash flow is insignificant or simply part of a larger portfolio, or who otherwise can easily absorb the loss of the income stream on this note. Based upon the foregoing, relief from stay is appropriate under § 362(d)(1).

Additionally, the Court finds that stay relief is warranted under § 362(d)(2). As noted, the Court determines, upon the record presented by the parties, that the Debtor does not have equity in the property. That satisfies the requirement of § 362(d)(2)(A). In regard to the requirement of § 362(d)(2)(B), that the property be "not necessary to an effective reorganization," an analysis must be made on two fronts.

First, is the property "necessary?" It is clear that this property is desired by the

Debtor for her attempted reorganization of her financial affairs. But the question of whether or not a debtor's residence is "necessary" to there organization asks the Court to consider not only the Debtor's desire to preserve her interest in this property. It also asks the Court to determine whether or not there is any equity of the Debtor in the property which is being salvaged by recourse to Chapter 13.

As noted above, the evidence before the Court—including the Debtor's schedules—establishes that whatever interest the Debtor has over and above secured claims is di minimis. This is not a situation where a debtor uses Chapter 13 as a vehicle to preserve significant amounts of exempt value in a residence.

The Debtor states, and the Court accepts her representations as true and sincere, that she will undertake additional employment and do "whatever it takes" to save this house. That does not necessarily establish, however,that this specific property is "necessary" to the Debtor's reorganization.

As indicated by the Court at the time of hearing, the evidence would indicate payment of the ongoing contract instalments on the first and second secured claims, real property taxes, and cure of defaults on the secured claims would generate a monthly burden upon the Debtor of something in the range of $1,300.00 to $1,400.00. This would consume fully half of Debtor's monthly pre-tax income.

By the Debtor's own testimony and exhibits, there have previously been significant problems with this residence which have required repair. The evidence is somewhat conflicting as to the present condition of the property, though it is clear the property is an older house and future investment of funds for repair and upkeep is likely. While living accommodations are necessary, nothing is unique about this property or Debtor's interest in it which would indicate that such a significant portion of the Debtor's future income should or need go to payment of these obligations as opposed to payment for alternative housing.

In addition to questions over whether or not this particular property is "necessary" to reorganization is the related question of whether or not there is, in sight, a possibility of an "effective reorganization". The Debtor, under § 362(g)(2), has the burden on this issue. While this doesn't necessarily require the same quantum of evidence needed to establish feasibility under § 1325(a)(6), I still find that the Debtor has failed to carry the burden.

The Debtor's budgets, Schedules I and J, in this case and the preceding case, reflect a modest income. Debtor's new budget projects an income increase not supported by historical experience, and not supported by any specific evidence.

Debtor's expenses are conservatively stated. There is little room in the expense side of the budget for reallocation of funds to other needs. While the budget accounts for the ongoing contract payments to Wendover and Kelly, it does not provide for real property taxes or insurance. The Debtor is self-employed and predicts no liability for taxes; if she is wrong, the ability to perform is further eroded. The Debtor's projections leave no room for error.

As noted above, the existing plan under estimates by a significant degree the amount that will be necessary to provide adequate cure to the two secured creditors. The budget does not appear to support Debtor's ability to pay much more than what has already been proposed. There is an additional issue impacting feasibility and the question of whether a confirmable plan can be proposed. Here, Kelly has a contract secured by the Debtor's residence. The contract requires a "balloon" payment of the entire remaining balance of the obligation by December 1,2001. No argument has been advanced by the Debtor that this obligation could or would be restructured or otherwise modified. Nothing was presented to establish an ability of the Debtor to satisfy this prospective condition, which will arise during the probable term of her chapter 13 plan.

No single issue addressed in this Summary Order has been given determinative effect standing alone. Collectively, however, they all lead the Court to conclude that Kelly has established a right to stay relief under § 362(d)(2) as well as under § 362(d)(1).

IT IS HEREBY ORDERED that the motion of Karen Kelly for relief from the § 362(a) automatic stay is GRANTED. If Kelly desires a separate form of order, one may be submitted.